IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ZACHARY LEE GLENN,

    Plaintiff,                           No. CIV S-06-0151 FCD KJM P

    vs.

JONATHAN S. COLE,

    Defendant.                      FINDINGS AND RECOMMENDATIONS

                           /

        Plaintiff is a state prisoner proceeding pro se with an action under 42 U.S.C. § 1983.  On July 14, 2009, the Clerk of Court entered default against the only remaining defendant, Jonathan S. Cole.  See Docket No. 33.  Plaintiff then moved for a default judgment.  See Docket No. 36.  The court, exercising its discretion under Federal Rule of Civil Procedure 55(b)(2), held a hearing on April 20, 2010, to adduce evidence on damages and on plaintiff's core allegation that defendant Cole disclosed information about plaintiff to other inmates, which in turn put plaintiff in danger of retaliation or attack by other inmates.  Plaintiff appeared via video conference.  Defendant Cole did not appear, nor did any counsel appear on his behalf.[1]

---

[1] Defendant Cole was served with notice of the hearing by mail at High Desert State Prison.  See Docket No. 38 and Minute Order of February 10, 2010.  Additionally, the court effected courtesy service on the Attorney General's Office.  See Docket No. 38.

1

I.      Default Judgment Procedure

Federal Rule of Civil Procedure 55(b)(2) states that a court may hold a hearing on a default judgment when, in order to enter or effectuate judgment, it needs to:

  (A)  conduct an accounting;

  (B)  determine the amount of damages;

  (C)  establish the truth of any allegation or evidence; or

  (D)  investigate any other matter.

"Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment. 'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). A court may exceed the requirements of the rule by receiving evidence on some or all of the allegations in the complaint, in addition to receiving evidence on damages. Id. at 918. "The hearing is not considered a trial, but is in the nature of an inquiry before a judge. . . . [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability." Wright, Miller and Kane, 10A Fed. Prac. & Proc. Civ. § 2688 (3d ed.).

II.     Allegations Of The Complaint

Because defendant Cole has defaulted, the allegations of the complaint are taken by the court to be true. See Elektra Entertainment Group, Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D.Cal. 2005).

Plaintiff's complaint alleges that while he was an inmate at High Desert State Prison (HDSP), defendant Cole, a correctional officer there, gave other inmates copies of plaintiff's CDC 114-D order, which authorized placing plaintiff in the administrative segregation unit at HDSP. The complaint and its exhibits are not clear about the specific contents of the CDC114-D order, but the complaint suggests that the order states the reason for plaintiff's housing assignment. According to the complaint, that reason, once known to other inmates,

created a threat to plaintiff's safety. The complaint is somewhat specific about who posed a threat to plaintiff, alleging that defendant Cole gave the 114-D order to "a Compton crip" and that Cole "tried to have me killed by my ex home boys by giving them my lock up paper as to show them why I was placed in ad-seg. . . ." Compl. at 3 (Docket No. 1). On one of plaintiff's administrative grievance forms, he complained that, as a result of Cole's actions, "I have been labeled as a no good snitch." Id. at 6.

III.     Evidence Adduced At The Hearing

At the hearing on plaintiff's motion for default judgment, plaintiff confirmed that he is a former member of the Compton Crips.[2] He repeated his complaint's allegation that Cole showed the CDC114-D order to other, still-active members of the gang. Plaintiff said he understood Cole's actions to be retaliation for plaintiff's flooding the tier by stopping up his toilet.

In compliance with the court's order, plaintiff submitted a copy of the CDC114-D order before the hearing. The order states that plaintiff was placed in administrative segregation for "self-admitted safety concerns." See CDC 114-D Order (Docket No. 42 at 9). It also references a "confidential information memorandum authored by Sergeant C.K. Lockard on 11/22/04." Id. Plaintiff did not produce the confidential memorandum, but he stated at the hearing that he had disclosed to Sergeant Lockard information about active members of the Crips gang at the prison, including "who had knives and who had dope." According to plaintiff, his former gang associates were able to deduce from the CDC 114-D form that plaintiff had provided information about them to prison officials. After they saw the form, they accused plaintiff of being a "rat" and a "snitch."

---

[2] While plaintiff's statements at the hearing were not made under oath, they were subject to Federal Rule of Civil Procedure 11 and were not controverted by defendant Cole, who failed to appear at the hearing. The court is aware of no reason not to find credible, in the context of the entire record before the court, plaintiff's statements about his prior gang affiliation and the events leading up to defendant Cole's disclosure of the CDC 114-D form.

Plaintiff stated that he feared for his safety, but he conceded he was never assaulted or threatened face-to-face.  However, he did receive notes (or "kites") saying that he would be hurt, that he could never return to his old neighborhood after prison and that he was a "rat."  He also explained that, because of inmates' ability to send kites between prisons, he could not escape the threat to his safety even after being transferred out of HDSP.  According to plaintiff, he will be restricted to administrative segregation for the remainder of his incarceration no matter where he is housed.  He said that assignment to administrative segregation means he is unable to visit with his family.  Plaintiff claimed at the hearing that the stress of these restrictions has caused him "a lot of pain" and mental suffering.

IV.     Legal Determinations

Even as the court accepts all factual allegations of the complaint as true, the court must also determine whether those allegations, together with plaintiff's statements that the court finds credible, are sufficient to establish liability and justify the imposition of damages.

In some circumstances, a prison official may create a serious risk of irreparable harm, and thus violate the Eighth Amendment, by giving other inmates reason to believe that a particular inmate is a jailhouse "snitch."  See, e.g., Threatt v. Arredia, 2008 WL 4376412 at *3 (W.D.Mich.).  However, in order to recover under § 1983, a plaintiff must show he has been threatened, assaulted or otherwise suffered some actual, detrimental effect as the result of a negative rumor spread by a correctional officer.  See Vanlandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  This court has distinguished between specific allegations that the prisoner has been threatened or assaulted as a result of such a rumor and vague averments that the rumor was spread as retaliation by a prison officer but without any threatening effect.  See Adams v. Tilton, 2009 WL 2915100 at *13 (E.D.Cal.).  Only the former kind of allegation states a claim on which relief can be granted.

Plaintiff stated at the hearing that after Cole disclosed the 114-D form to other inmates, he received notes calling him a "rat" and threatening him with injury.  The court finds

4

this part of plaintiff's claim credible and determinative.  Although the receipt of anonymous notes is not as grave as a physical assault or as serious as a face-to-face confrontation, the fact that plaintiff was put in fear for his safety as a result of defendant Cole's actions establishes an Eighth Amendment violation.  The only question remaining is the amount of plaintiff's damages.

      A.      <u>Damages</u>

Because plaintiff experienced no physical injury as a result of defendant Cole's actions, he cannot recover compensatory damages for emotional or mental suffering.  The Prison Litigation Reform Act (PLRA) states: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The Ninth Circuit, following several other federal appellate courts, has interpreted this provision to mean that "for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than <u>de minimis</u>." <u>Oliver v. Keller</u>, 289 F.3d 623, 627 (9th Cir. 2002).  Therefore, even though plaintiff has satisfied every element of his cause of action, he cannot recover compensatory damages for purely emotional injury.

      1.      <u>Nominal Damages</u>

The lack of physical injury in this case does not foreclose the availability of damages altogether.  In civil rights cases, "nominal damages are normally awarded when a plaintiff is unable to demonstrate an entitlement to compensatory damages." <u>Schneider v. County of San Diego</u>, 285 F.3d 784, 795 (9th Cir. 2002).  In fact, the award of nominal damages in § 1983 cases is mandatory as "symbolic vindication" of a plaintiff's constitutional rights, whether or not he has been physically injured. <u>Id.</u> at 794.  "[N]ominal damages must be awarded if a plaintiff proves a violation of his constitutional rights." <u>Estate of Macias v. Ihde</u>, 219 F.3d 1018, 1028 (9th Cir. 2000).  Therefore, the undersigned will recommend a nominal damages award to plaintiff of $1.00.

2.   <u>Punitive Damages</u>

Once nominal damages are awarded, a court may consider a punitive damages award under § 1997e(e). See <u>Oliver</u>, 289 F.3d at 629-30. The amount of punitive damages is not limitless. Rather, the Supreme Court has found some punitive awards to be so excessive as to violate the Due Process Clause of the Fourteenth Amendment. See <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996) and <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 U.S. 408 (2003). Under <u>Gore</u>, a court evaluates the constitutionality of a punitive damages award according to three factors: (1) the degree of reprehensibility of the tortious act; (2) the disparity between the harm suffered and the punitive damages award; and (3) the difference between the instant remedy and the civil penalties authorized or imposed in comparable cases. <u>Gore</u>, 517 U.S. at 574-75.

a.   <u>Defendant's Reprehensible Conduct</u>

The Supreme Court's ruling in <u>State Farm</u> outlines the factors a federal court should consider when evaluating the reprehensibility of the defendant's conduct. The court should ask whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct has financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

<u>State Farm</u>, 538 U.S. at 419. The Ninth Circuit has stated that "[r]eprehensibility falls along a scale, with 'acts and threats of violence at the top, followed by acts taken in reckless disregard for others' health and safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence.'" <u>Mendez v. County of San Bernadino</u>, 540 F.3d 1109, 1120 (9th Cir. 2008) (quoting <u>Swinton v. Potomac Corp.</u>, 270 F.3d 794, 818 (9th Cir. 2001)).

Although plaintiff suffered no physical injury, the court recognizes, as have other courts, the grave implications of being known as an informant in prison, much less one such as

plaintiff who reports on the activities of his former gang brethren.  The Fourth Circuit has noted "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"  Miller v. Leathers, 913 F.2d 1085, 1088 n.* (4th Cir. 1990).  The Fifth Circuit has been more understated: "the life of a 'snitch' in a penitentiary is not very healthy."  United States v. Henderson, 565 F.2d 900, 905 (5th Cir. 1978).  The District of Columbia district court has observed, "one can think of few acts that could be more likely to lead to physical injury [to an inmate] than spreading rumors of . . . informing."  Thomas v. District of Columbia, 887 F.Supp. 1, 4 (D.D.C. 1995).  Here, the record supports a conclusion that when Cole disclosed the CDC114-D form, he put plaintiff at risk of physical harm by labeling him a snitch in the eyes of active Compton Crips in the same housing unit.  Cole thus took affirmative, unilateral steps to create a danger of assault on plaintiff that did not otherwise exist; the Crips obliged by threatening plaintiff with reprisal.  Such conduct registers, at a minimum, as reckless disregard for an independent threat to plaintiff's safety, the second highest degree on the Mendez reprehensibility scale.  Cole's motivation – i.e., retaliation for plaintiff's flooding his tier by stopping up his toilet – was disproportionate to the offense and unjustified.  Cole's alternatives for dealing with plaintiff's misconduct were: (1) verbal counsel with plaintiff, (2) a written report ("chrono") to be placed in plaintiff's central file, or (3) a rules violation report that would initiate disciplinary proceedings against plaintiff.  See 15 C.C. R. § 3312.  Under California law, these options were the only allowable methods of dealing with plaintiff's misconduct.  Id. (prefacing the three options for handling inmate misconduct with the word "shall").  Cole's conduct meets the "reprehensibility" prong in this case.[3]

/////

---

[3] The court also notes that ever since defendant Cole disclosed the CDC114-D form, plaintiff has remained in segregated housing, away from the general prison population for several years precisely because of the threat posed by plaintiff's former gang associates.  That precautionary measure constitutes a significant, ongoing restraint on plaintiff's liberty that could have been avoided had Cole not exacted his own form of payback.

       b.  Ratio Of Nominal To Punitive Damages; Penalties In Comparable Cases

Because the court determines the amount of punitive damages in the first instance here, the court does not approach the question of punitive damages in the same posture as an appellate court would in applying <u>Gore</u>. Still, the court is mindful of the standards set by the Supreme Court in assessing punitive damages. The second and third factors articulated in <u>Gore</u> – the disparity between actual and punitive damages and the penalties allowed in comparable cases – therefore guide the court in its decision.

"Under the second <u>Gore</u> guidepost, we look to the ratio between the punitive damages and the actual harm inflicted on the plaintiff." <u>Mendez</u>, 540 F.3d at 1121. In <u>State Farm</u>, the Supreme Court declined to articulate any bright-line rules defining acceptable and excessive punitive damage awards, but it did say that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the... goal of deterrence and retribution, than awards with ratios in the range of 500 to 1, or, in [State Farm's] case, 145 to 1." <u>State Farm</u>, 538 U.S. at 425. The Court acknowledged an exception, however, that "ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." <u>Id</u>. (internal quotations omitted). In <u>Mendez</u>, the Ninth Circuit found § 1983 cases often fit well into this exception:

> Constitutional torts... are far more likely to present such scenarios. Ratios in excess of single digits in § 1983 suits therefore will not generally violate due process when the victim suffers no compensable injury. If we were to hold otherwise, then "<u>any</u> appreciable exemplary award would produce a ratio that would appear excessive by this measure." This would conflict with the [Supreme] Court's clear guidance that punitive damages should remain available under § 1983 even in the absence of a compensable injury, and that in such situations "punitive damages may be the only significant remedy available."

<u>Mendez</u>, 540 F.3d at 1121-22 (citations omitted). The Ninth Circuit went on to state that

/////

punitive damages ratios under Gore "may have reduced relevance in § 1983 suits involving only nominal damages, [but] we do not agree... that this factor has no relevance." Id. at 1122.

The final Gore factor requires the court to look at the civil penalties authorized or imposed in comparable cases. In Mendez, the Ninth Circuit upheld the district court's punitive award of $5,000.00, which represented a ratio of 2,500 to 1 on claims of false arrest and illegal search.[4] More instructive is the punitive damages award assessed by the jury in Vanlandingham after the Ninth Circuit held that a prisoner could recover under § 1983 for the endangerment caused by a guard's rumors that he was a snitch and remanded the case for trial. Vanlandingham, 866 F.2d at 1138. On remand, the Vanlandingham jury awarded the plaintiff $1.00 in nominal damages and $4,000.00 in punitive damages. See Vanlandingham v. Moen, 1992 WL 102662 at *1 (9th Cir.).[5]

      c.  Punitive Damages Award

Punitive damages can serve the dual purpose of deterrence and retribution. State Farm, 538 U.S. at 416. Here, the court is concerned with deterrence. In considering deterrence, the Eastern District of Michigan awarded punitive damages against a prison guard for his unconstitutional retaliation against an inmate by having him transferred to another prison,

---

[4] The Mendez jury awarded $1.00 in nominal damages to the plaintiff on each of her two claims. The Mendez plaintiff had watched police shoot her deaf mute son during a standoff in a neighbor's driveway. Although she was not a suspect, she was kept in a police car more than two hours immediately after the shooting, then taken to a police station and held without her consent for several more hours. Police never told her her son had died as a result of the shooting, even though she asked about his well being; she was told only that she "could not see him." She was also required to sign a form, written in English, consenting to the search of her home. The plaintiff understood only Spanish, but the form was not translated for her. After she left the station, she was barred from re-entering her home until police finished searching it; the search left her home in disarray. See Mendez, 540 F.3d at 1116. The district court remitted the jury's punitive award of $250,000.00.

[5] The second Vanlandingham opinion is unpublished. The court cites it here in accord with the Ninth Circuit rule allowing citation of an unpublished opinion "for factual purposes, such as to show . . . sanctionable conduct [or] notice." 9th Cir. R. 36-3(c)(ii). The court only cites to the second Vanlandingham opinion for the amount of the jury's punitive award, not for any ruling articulated by the Ninth Circuit. The prison official who was held liable in Vanlandingham did not challenge the proportionality of the punitive award on appeal.

effectively severing all contact with his disabled daughter.  Rejecting that defendant's argument that a punitive award of $200,000.00 (representing a ratio of punitive to economic damages of 50 to 1) was excessive, the district court explained that

> [a]dopting the approach urged by Defendant would encourage bad behavior by prisoner [sic] officials and would discourage settlement in litigation because it would tell prison officials that they could violate prisoners' rights on the cheap.  Their exposure to punitive damages would not exceed the limited compensatory and economic damages available to prisoners.

Siggers-El v. Barlow, 433 F.Supp.2d 811, 819 (E.D.Mich. 2006) ("to limit the plaintiff to compensatory [or nominal] damages would enable the defendant to commit the offensive act with impunity provided that he was willing to pay," Mathias v. Accor Econ. Lodging, 347 F.3d 672, 677 (7th Cir. 2003)).

Guided by the Gore factors, the court finds a punitive award of $2,000.00 appropriate given the record in this case.  This is one-half the amount, and represents application of one-half the ratio, awarded in Vanlandingham on remand, a case in which the threat to plaintiff's safety culminated in fights with other inmates after the defendant spread rumors he was a snitch.  The court assesses a lesser amount here based on plaintiff's concession he was never physically confronted, while taking account of his reports of verbal threats and uncontroverted characterization of the reasons for his permanent assignment to segregated housing.  The amount should serve to deter conduct akin to defendant Cole's in the future.

Accordingly, IT IS RECOMMENDED that:

1. Plaintiff's motion for default judgment (docket no. 36) be granted.

2. Plaintiff be awarded $1.00 in nominal damages from defendant Cole.

3. Plaintiff be awarded $2,000.00 in punitive damages from defendant Cole.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written

1 objections with the court and serve a copy on all parties. Such a document should be captioned
2 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
3 shall be served and filed within twenty-one days after service of the objections. The parties are
4 advised that failure to file objections within the specified time may waive the right to appeal the
5 District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6 DATED: June 7, 2010.

_____
U.S. MAGISTRATE JUDGE

4
glen0151.default(2)